EMILSO AUCEDA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Auceda v. Commissioner
Docket No. 22034-93
United States Tax Court
T.C. Memo 1995-193; 1995 Tax Ct. Memo LEXIS 194; 69 T.C.M. (CCH) 2510; April 27, 1995, Filed *194 Decision will be entered under Rule 155. Emilso Auceda, pro se. For respondent: Donna F. Herbert. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined deficiencies in petitioner's 1990 and 1991 Federal income taxes in the amounts of $ 1,762 and $ 2,377, respectively. The issues for decision are: (1) Whether petitioner is entitled to dependency exemptions for his father, brother, sister, and niece for each year, plus his mother for 1990 and his son for 1991; (2) whether petitioner is entitled to head of household status in each year; and (3) whether petitioner is entitled to an earned income credit in 1991. Some of the facts have been stipulated and are so found. The stipulation of *195 facts and attached exhibits are incorporated herein by this reference. At the time of the filing of the petition herein, petitioner resided in North Hollywood, California. As an underlying principle in analyzing this case, it should be stated that deductions and credits are a matter of legislative grace, and taxpayers must satisfy the specific statutory requirements of the item claimed. Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Petitioner bears the burden of proving his entitlement to the claimed deduction or credit. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Dependency Exemptions
Petitioner claimed personal exemptions for his father, mother, brother, sister, and niece on his 1990 return. Petitioner also claimed personal exemptions for his father, brother, sister, niece, and son on his 1991 return. Petitioner stated that his father, Rafael Auceda, was approximately 66 years old when he arrived in the United States in 1989. He was unemployed in 1990 and 1991 because of his age. Petitioner testified *196 that his father resided with petitioner throughout 1990 and 1991, that petitioner supported his father, and that his father returned to Guatemala in 1992. Petitioner stated that his mother, Maria Morales Auceda came to the United States in December 1989, when she was approximately 63 years old. During 1990, she was unemployed because of her age. Maria allegedly came to the United States in 1989 for 10 to 11 months, traveled to and stayed in Guatemala for 2 months in 1991, returned to the United States in 1991, and resided with petitioner until her departure in 1992. According to petitioner, he was his mother's sole support during the periods when she was in the United States. Rudy Auceda, petitioner's brother, came to the United States in 1989 when he was approximately 21 years old. Upon his arrival, Rudy resided with a cousin, Luis Domingez in Azusa, California. After Mr. Domingez married, Rudy moved into petitioner's home. Despite seeking employment in 1990 and 1991, Rudy was unemployed because he was an undocumented alien. Rudy currently resides in California. Rudy has obtained a driver's license, Social Security card, and employment authorization. However, Rudy was *197 not present at trial and did not testify for petitioner. Nineth Auceda, petitioner's sister, allegedly also came to the United States in 1989 with her daughter Melany. Upon her arrival, Nineth was approximately 18 to 19 years old. During 1990 and 1991, she was unemployed because she was an undocumented alien. Petitioner testified that she resided with him, and he furnished all of her support. Melany Auceda, petitioner's niece, allegedly also arrived in the United States in 1989. Melany was 1 year old when she came to the United States with her mother, Nineth Auceda. According to petitioner, Nineth and Melany returned to Guatemala in 1992 because Nineth was ill and needed medical care. Petitioner claimed his son, Emilso Ruiz-Auceda, as a dependent in 1991. Emilso was born on March 10, 1991, in Mexico. His mother, Guadalupe Ruiz-Espinoza, is a Mexican national and currently resides there. Allegedly, petitioner's son came to the United States with his mother when he was 1 month old, but returned to Mexico in 1992 with his mother. Petitioner testified that he has two additional brothers, Carlos Auceda and Irma Yolanda who reside in Guatemala. Further, petitioner testified *198 that in 1990 and 1991, he worked as a busboy and gardener to support his family. None of his family members brought money or other property to the United States. At trial petitioner produced three letters to demonstrate that these family members resided with him and that he provided their support. Respondent objected to these letters on authenticity and hearsay grounds. We agree and sustain respondent's objection. However, even if these letters were admitted into evidence, they would not support petitioner's testimony. The first letter (in Spanish and with translation) was from petitioner's sister Nineth and apparently dated sometime in 1992, seems to state that petitioner was responsible for lodging, food, and other expenses for her daughter Melany since 1990. The letter does not address petitioner's claims regarding his sister herself and does not confirm the length of stay in the United States of either Nineth or Melany. The second letter is from petitioner's cousin, Luis Domingez. In this letter, Mr. Domingez states that Rudy lived with Mr. Domingez from June 1989 until January 1991. It also states that petitioner paid for Rudy's share of the rent. Petitioner testified *199 that Mr. Domingez misidentified the date as 1991, indicating that the correct date should be 1990. The third letter is from petitioner's apartment manager, Edward Ruiz. This notarized letter states that petitioner lived at 5404 La Mirada from March 1, 1990 until January 31, 1992, with his father, mother, brother, sister, and niece. This letter does not mention petitioner's son Emilso. Further, it does not support petitioner's contention that his family members arrived in the United States in 1989 and lived with him continuously from 1989 until 1992. Petitioner requested that his landlord write this letter after he received the notice of deficiency. Although Mr. Ruiz was contacted by petitioner to testify, he did not appear at the trial. Nevertheless, in the stipulation of facts, the parties stipulated that Melany Auceda, Nineth Auceda, Rudy Auceda, Maria Morales, and Rafael Morales, were citizens of Guatemala in 1990 and 1991 and that Melany, Nineth, and Rudy came to the United States for short periods of time on limited visitor's visas in 1990 and 1991. At trial petitioner testified that this stipulation was a mistake. Instead, he testified that all of his family members *200 came to the United States as undocumented aliens and that all of the above-mentioned family members left the United States in 1992, with the exception of Rudy. Petitioner testified that he had no receipts, money orders, checks or other documents to show that he supported these family members. He further testified that none of these family members required any medical care while in the United States. A taxpayer may claim an exemption deduction pursuant to section 151 if five requirements are satisfied. All five requirements must be met to qualify for the exemption deduction. Therefore, if the taxpayer fails to satisfy even one element, he is ineligible to claim the deduction. First, section 151(c)(1) provides that the gross income of the dependent, defined in section 152, must be less than the exemption amount for the calendar year or the dependent must be a child of the taxpayer under the age of 19 or a student under the age of 24. According to petitioner, none of his family members were employed during 1990 or 1991. Rudy and Nineth were unemployed because they were undocumented aliens. Moreover, Melany, Maria, and Rafael were unemployed because of their age. Emilso was *201 petitioner's 1-month old son. Petitioner's testimony is accepted by this Court. Thus, this requirement is satisfied. Second, section 151(c)(2) requires that the claimed dependent must not have filed a joint return. Respondent has conceded that none of petitioner's family members filed a United States income tax return in 1990 or 1991. Thus, this requirement is satisfied. Third, section 152(a) defines "dependent" as including father, mother, brother, sister, niece, and son. Thus, this requirement is satisfied. Fourth, section 152(b)(3), as relevant herein, requires the claimed dependent to be a citizen or national of the United States or a resident of the United States, Canada, or Mexico during the calendar year. Rafael, Maria, Rudy, Nineth, and Melany are not citizens or nationals of the United States; they are citizens of Guatemala. Moreover, there is insufficient evidence to support a finding that any of the claimed dependents, except Rudy, lived with petitioner continuously during 1990 and/or 1991. However, we are satisfied that Rudy did reside in the United States during 1990 and 1991 and with petitioner during 1991. Moreover, petitioner's testimony that Rudy remained *202 in the United States after the other family members returned to Guatemala, coupled with his procurement of a driver's license, social security card, and employment verification persuades us that Rudy resided in the United States in 1990 and 1991. On the other hand, there is no similar credible, reasonable, or reliable evidence to prove that Nineth, Maria, Rafael, or Melany resided in the United States for any substantial period during 1990 or 1991. This Court is required to rely on the record before it, and such record is devoid of any independent or reliable documentation or evidence to show that Rafael, Maria, Nineth, or Melany was a resident of the United States during 1990 or 1991. Thus, the fourth requirement is not satisfied for Maria, Rafael, Nineth, or Melany. As for petitioner's son, the record does establish that petitioner's son was, at least, a resident of Mexico. Thus, the fourth requirement is satisfied for petitioner's son. Based upon the foregoing discussion, petitioner does not qualify for the exemption deduction for Rafael, Maria, Nineth, or Melany since he failed to establish that any of them resided in the United States in 1990 or 1991. However, the fifth *203 requirement must be considered with reference to Emilso and Rudy. Fifth, section 152(a) requires that the petitioner provide over one-half of the support for the claimed dependent during the calendar year. According to petitioner's testimony, he worked as a busboy and gardener to support his family. Additionally, petitioner testified that Rudy was unemployed in 1990 and 1991 because of his alien status and that he supported Rudy in those years. On this record, we cannot find that petitioner provided over one-half of the support for Rudy in 1990. However, for 1991, we conclude that petitioner did provide over one-half of the support for Rudy in 1991. Therefore, petitioner is entitled to a dependency deduction for Rudy for 1991. On the other hand, petitioner presented no evidence to show that he provided any support for his son Emilso. Petitioner did not produce any records, receipts, bills, or other documentation to show that he provided food, shelter, clothing, medical and dental care, or any other support for Emilso. Thus, the fifth requirement is not satisfied for Emilso. Therefore, petitioner is not entitled to a dependency deduction for his son. Head of Household
*204 Petitioner also claimed "head of household" status on his 1990 and 1991 returns. As relevant herein, section 2(b) defines the term "head of household" generally as an unmarried taxpayer who maintains a household that constitutes the principal place of abode of his child or other person qualifying as a dependent for more than half the taxable year. Since petitioner's son was not born until 1991 and we have determined that petitioner does not qualify for any exemption deduction for dependents in 1990, it follows that he cannot qualify as head of household for 1990. On the other hand, based on our determination that petitioner's brother, Rudy, was a dependent of petitioner in 1991, that Rudy did live with petitioner for more than half of 1991, and that petitioner did maintain the requisite household in 1991, petitioner is entitled to head of household status for 1991. [2]
Earned Income Credit
Petitioner claimed the earned income credit on his 1991 return. *205 This credit was disallowed by respondent because a qualifying child did not reside with petitioner for more than 6 months during 1991. To be entitled to the earned income credit pursuant to section 32, the taxpayer must meet certain income requirements and a "qualifying child" must have the same principal abode as the taxpayer for more than 6 months of the taxable year. Sec. 32(c)(3). Petitioner's son was born in Mexico on March 10, 1991. Petitioner failed to prove that his son actually resided in his household for more than 6 months in 1991. Petitioner has failed to meet his burden of proof on this issue. Thus, petitioner is not entitled to the earned income credit. Accordingly, we sustain respondent on this issue. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner was not married to the mother of his son.↩